**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION**

|  |  |  |
|---|---|---|
| BOBBI J. RIDDLE, on behalf of herself and others similarly situated, | ) ) ) | **Civil Action No. 3:19-cv-00249** |
|  | ) |  |
| Plaintiff, | ) ) | **PLAINTIFF'S UNOPPOSED MOTION** |
|  | ) | **FOR PRELIMINARY APPROVAL OF** |
| v. | ) | **CLASS ACTION SETTLEMENT** |
|  | ) |  |
| ATKINS & OGLE LAW OFFICES, LC, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

# Table of Contents

Introduction ........................................................................................................... 1

Settlement Summary ............................................................................................. 2

    I.    All class members will receive cash payments, and Defendant no longer uses the form collection letter in dispute. ...................................................................................... 2

    II.    The Agreement provides for direct mail notice to all class members. .............................. 3

Argument ............................................................................................................... 4

    I.    This Court should certify the settlement class. ......................................................... 4

        A.    Settlement class members are so numerous that joinder is impracticable. .................... 4

        B.    Questions of law and fact are common to members of the class. .................................. 5

        C.    Ms. Riddle's claims are typical of class members' claims. ........................................... 6

        D.    Ms. Riddle and her counsel will fairly and adequately protect the interests of class members. ................................................................................................................. 6

        E.    GDR should be appointed class counsel. .................................................................... 7

        F.    The questions of law and fact common to the class predominate over any questions potentially affecting only individual members. ...................................................... 8

        G.    A class action is the superior means for the fair and efficient adjudication of Ms. Riddle's and the class's claims. .............................................................................. 9

    II.    This Court should preliminarily approve the class settlement as fair, reasonable, and adequate under Rule 23(e). ................................................................................... 11

        A.    The parties fairly and honestly negotiated their settlement with the benefit of experienced counsel, whose views favor preliminary approval. ........................... 12

        B.    The strengths of Ms. Riddle's case, combined with the risks inherent in continued litigation and securing class certification, favor preliminary approval. ............................... 14

        C.    The relief afforded by the settlement—when compared to the limitations on damages imposed by the FDCPA—favors preliminary approval. ...................................... 14

        D.    The immediate value obtained for the class outweighs the mere possibility of future relief after protracted and expensive litigation. .............................................. 17

        E.    The settlement treats all class members equitably. ................................................. 18

III.    This Court should approve the parties' proposed direct mail notice program.............. 18

IV.    Scheduling a final fairness hearing is appropriate. ....................................................... 20

Conclusion ................................................................................................................................ 20

## Introduction

Between April 2018 and April 2019, Atkins & Ogle Law Offices, LC ("Defendant") sent about 200 initial debt collection letters on behalf of one of its clients, Discover Bank. All of the letters followed a template and thus contained materially identical verbiage, save for the address and personal information of each Discover accountholder. Bobbi J. Riddle received one of the letters and filed a putative class action lawsuit contending the letter violated the Fair Debt Collection Practices Act ("FDCPA") because it provided mixed and confusing messages regarding when she could dispute her debt, when payment was due, and what actions Defendant might take against her in the interim.

While Defendant denies liability or that its practices violated the FDCPA, it nevertheless agreed to resolve this matter on a class-wide basis. Not only will Defendant create a non-reversionary cash settlement fund of $5,500 (approximately $27.50 per class member), it has also discontinued use of the form collection letter at issue and will separately pay Ms. Riddle full statutory damages of $1,000. Moreover, Defendant will cover all costs of providing notice to the class and administering the settlement, plus it will pay Ms. Riddle's counsel a total of up to $50,000 in attorneys' fees and costs, subject to this Court's approval—an amount negotiated *after* the parties reached agreement on the other settlement terms outlined above.

Importantly, the class settlement fund of $5,500 nearly reaches the limit on class statutory damages imposed by the FDCPA, which are capped by law at one percent of Defendant's net worth. Thus, the class's financial recovery, combined with Defendant's agreement to no longer use its form collection letter, represents an excellent result for class members and for any other consumers who experience Defendant's debt collection efforts in the future.

Ms. Riddle accordingly seeks certification of the settlement class defined below, as well as preliminary approval of the parties' negotiated class settlement. She and class counsel strongly

believe in the fairness, reasonableness, and adequacy of the proposed resolution, and that it is in the best interests of all 200 class members affected by Defendant's conduct. Ms. Riddle respectfully requests that this Court enter the accompanying order granting preliminary approval to the settlement, directing class notice in the form and manner provided in the parties' settlement agreement, and setting a final fairness hearing in accordance with Rule 23.

Defendant does not oppose this relief.

## Settlement Summary

### I. All class members will receive cash payments, and Defendant no longer uses the form collection letter in dispute.

A copy of the parties' Class Action Settlement Agreement ("Agreement") is attached to the Declaration of Jesse S. Johnson accompanying this motion. The material terms are summarized here. First, the parties' Agreement defines a settlement class under Rule 23(b)(3) comprised of:

> All persons (a) with a West Virginia address, (b) to whom Atkins & Ogle Law Offices, LC mailed an initial debt collection communication not returned as undeliverable, (c) in connection with the collection of a consumer debt, (d) between April 4, 2018 and April 4, 2019, (e) which stated: "You have the right to cure this default by sending this amount to me within 30 days of the date of this letter."

Defendant represents that there are 200 class members, including Ms. Riddle.

For that settlement class, Defendant will establish a $5,500 non-reversionary settlement fund from which each participating class member will receive a pro-rata portion of approximately $27.50. Importantly, there is no need for class members to submit a claim or any other documentation to participate in the settlement fund. To the extent any settlement checks go uncashed after the administrator takes all reasonable steps to forward checks to any forwarding addresses, the residual funds will be disbursed to Legal Aid of West Virginia as a *cy pres* recipient. None of the funds will revert to Defendant.

Separate from the settlement fund, Defendant will pay all costs of distributing class notice and administering the settlement. The administrator will take all reasonable steps necessary to ensure that each class member receives such notice, including updating addresses by running skip-trace searches for any mail returned as undeliverable. The parties jointly selected and request appointment of First Class, Inc., a highly experienced administrator, to fulfill these duties.

Further benefitting class members, as well as other consumers nationwide, Defendant has confirmed by way of the Agreement that it no longer uses the form collection letter that gave rise to class members' claims. In other words, Defendant will no longer engage in the very practice that formed the basis for the allegations in Ms. Riddle's complaint. Lastly, Defendant also will pay, separate from the settlement and administration funds, $1,000 in statutory damages to Ms. Riddle—the most allowed under the FDCPA—and, subject to this Court's approval, an award of attorneys' fees, costs, and expenses to her counsel in the agreed amount of up to $50,000. At the conclusion of the case, Ms. Riddle will file a separate motion seeking the Court's approval for this negotiated fee and expense award.

## II.    The Agreement provides for direct mail notice to all class members.

The parties' Agreement also requires a robust notice program providing for direct mail notice to each class member. Defendant's business records reflect the necessary contact information for each of 200 class members who received the disputed letters. It will provide those class members' names and addresses to the administrator, which will then take all reasonable steps necessary to ensure that each class member receives direct mail notice, including updating addresses by reference to U.S. Postal Service databases and sending the notices with forwarding addresses requested. For any notices returned undeliverable, the

administrator will take additional steps to locate updated addresses for those particular class members and re-mail the notices to the new addresses obtained.

**Argument**

**I.    This Court should certify the settlement class.**

The first order of business is certification of Ms. Riddle's proposed settlement class. To obtain certification, Ms. Riddle and the class must satisfy each of the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—as well as one of the requirements of Rule 23(b). *See Smith v. Res-Care, Inc.*, No. 13-5211, 2015 WL 461529, at *4 (S.D. W. Va. Feb. 3, 2015) (Chambers, J.) (approving class action settlement).[1] Here, Plaintiff proposes a settlement class pursuant to Rule 23(b)(3), and because certification is sought in the context of a settlement, the requirements of Rule 23(a) and 23(b)(3) are readily satisfied. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

**A.  Settlement class members are so numerous that joinder is impracticable.**

First, Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Although "[n]o specified number is needed to maintain a class action," *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984), "classes with as few as 25 to 30 members have been found to raise the presumption that joinder would be impractical." *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 477 (D. Md. 2014); *accord Smith*, 2015 WL 461529, at *4 ("where the class numbers twenty-five or more, joinder is usually impracticable").

---

[1]    Internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

Here, Defendant admits that it mailed the same form initial collection letter to approximately 200 recipients. Given their number, joinder of all class members would be "wholly impracticable," and Plaintiff has thus satisfied Rule 23(a) numerosity. *See, e.g.*, *Cyrus ex rel. McSweeney v. Walker*, 233 F.R.D. 467, 470 (S.D. W. Va. 2005) (Chambers, J.) ("the Court finds that Plaintiffs clearly can show numerosity as they have alleged 359 recipients have had their benefits terminated under the policy being complained about in this action").

### B.  Questions of law and fact are common to members of the class.

Second, as to commonality, "Rule 23(a)(2) does not require that all factual or legal questions raised in a litigation be common, so long as at least one issue is common to all members." *Woodard v. Online Info. Servs.*, 191 F.R.D. 502, 505 (E.D.N.C. 2000) (certifying FDCPA class). That is, "[f]actual differences among the class members' cases do not violate the rule, so long as a common legal theory is shared." *Id*. Commonality thus is generally satisfied when, as here, the defendant has engaged in a standardized course of conduct that affects all class members.

"[B]y definition, each putative class member received a dunning letter containing the same Verification Notice. The sole and dispositive legal question is whether that Verification Notice violates the FDCPA." *Bicking v. Mitchell Rubenstein & Assocs., P.C.*, No. 11-78, 2011 WL 5325674, at *2 (E.D. Va. Nov. 3, 2011). As each class member therefore has the same claim against Defendant, the commonality requirement is met. *See Talbott v. GC Servs. Ltd. P'ship*, 191 F.R.D. 99, 103 (W.D. Va. 2000) ("Mailing a standardized collection letter satisfies commonality and has been the basis for certification in similar cases."); *D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996) ("Because all of the proposed class members did receive each of the two identical letters at issue in this case, the allegations in the complaint

are common to all proposed class members. Standardized conduct is present here and, as stated above, such conduct weighs in favor of a finding that the commonality requirement is met.").

### C. Ms. Riddle's claims are typical of class members' claims.

Third, Rule 23(a)(3) typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." This "requirement mandates that Plaintiffs show (1) that their interests are squarely aligned with the interests of the class members and (2) that their claims arise from the same events and are premised on the same legal theories as the claims of the class members." *Smith*, 2015 WL 461529, at *5.

Here, Ms. Riddle and the absent class members suffered from a common practice employed by Defendant: its issuance of standardized initial debt collection letters that are alleged to have not contained proper disclosures mandated by the FDCPA. Ms. Riddle thus possesses the same interests and has suffered the same injuries as each class member, and she asserts identical claims and seeks identical relief on behalf of the unnamed class members. In other words, "in seeking to prove h[er] claims, [Ms. Riddle] will necessarily advance the claims of the Class. This is the hallmark of typicality." *Id.*; *accord Woodard*, 191 F.R.D. at 505 ("Here, all class members' claims are grounded in an identical practice and legal theory—the mailing of improper debt-collection letters in violation of the FDCPA."); *Talbott*, 191. F.R.D. at 104 ("Typicality is, by definition, inherent in Talbott's class, i.e., each class member was subjected to the same FDCPA violation as Talbott when they were sent the dunning letter.").

### D. Ms. Riddle and her counsel will fairly and adequately protect the interests of class members.

Fourth, this Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This entails confirmation that the named plaintiff "possess[es] undivided loyalties to absent class members" in accepting her

6

fiduciary role to represent their interests. *Smith*, 2015 WL 461529, at *5. In other words, the plaintiff must have no interests antagonistic to the interests of the class members.

Here, Ms. Riddle has diligently pursued this case since its inception with the goal of obtaining relief not only for herself, but also for absent class members. She is proud to have achieved both by way of settlement and thus undoubtedly "understands and has accepted the obligations of a class representative." *Id.* Further, "[c]onsidering that the claims are identical, there is no potential for conflicting interests to arise between [Ms. Riddle] and the Class Members." *Id.* at *6.

Likewise, Ms. Riddle's attorneys, Greenwald Davidson Radbil PLLC ("GDR"), are amply qualified to serve as class counsel in this matter given their substantial experience with consumer protection class actions like this one, particularly under the FDCPA. To that end, GDR has been appointed class counsel in several FDCPA class actions within this Circuit. *See, e.g.*, *Hoffman v. Law Office of Fradkin & Weber, P.A*, No. 19-163, 2019 WL 2723581 (D. Md. July 1, 2019) (preliminarily approving class settlement and appointing GDR class counsel); *Smith v. Cohn, Goldberg & Deutsch, LLC*, No. 17-2291, ECF No. 25 (D. Md. Mar. 8, 2018) (same); *Baldwin v. Glasser & Glasser, P.L.C.*, No. 15-490, ECF No. 13 (E.D. Va. Dec. 1, 2015) (same); *see also* Johnson Decl. at ¶ 7 (collecting cases nationwide).

As a result, Ms. Riddle satisfies Rule 23(a)(4) here. *See Smith*, 2015 WL 461529, at *5 (finding adequacy in part because the plaintiff "retained experienced counsel who has handled numerous FCRA class actions, typically as lead or co-lead counsel")

**E.  GDR should be appointed class counsel.**

Relatedly, Rule 23(g)(4) requires this Court to appoint counsel who will fairly and adequately represent the class, and to consider (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions,

other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit in representing the class. The accompanying declaration from counsel and precedent cited above demonstrate GDR's considerable experience leading consumer protection class actions. Given this proficiency, along with GDR's work to date in obtaining an efficient, favorable class recovery here, the requirements of Rule 23(a)(4) and Rule 23(g) are readily satisfied. *Accord Smith*, 2015 WL 461529, at *7.

### F. The questions of law and fact common to the class predominate over any questions potentially affecting only individual members.

Turning to Rule 23(b)(3), the Supreme Court has counseled that this "inquiry trains on the legal or factual questions that qualify each class member's case as a genuine controversy," with the purpose being to determine whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. The objective of Rule 23(b)(3) is to promote economy and efficiency in actions that are primarily for money damages. Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits; permit adjudication of disputes that cannot be economically litigated individually; and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class. Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966). Thus, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Prods., Inc.*, 521 U.S. at 625.

This Court has found that "[c]ommon questions predominate if classwide adjudication of the common issues will significantly advance the adjudication of the merits of all class members' claims." *Smith*, 2015 WL 461529, at *6. Here, the core legal issues before this Court are whether Defendant is a debt collector under the FDCPA, and whether its standardized initial debt

collection letters violated the FDCPA by failing adequately to provide requisite disclosures. The answers to these questions will advance all class members' claims in unison. As a result, the proposed settlement class satisfies the predominance requirement. *See Bicking*, 2011 WL 532674, at *3 ("In this matter, all of the proposed class members' claims arise from Defendants' act of mailing the dunning letter at issue. And as already established, their legal theories are identical: Each class member's potential claim turns on the single question of whether Defendants' Verification Notice violated the FDCPA. That shared issue clearly predominates over potential peripheral matters, making collective resolution sensible in this case."); *Talbott*, 191 F.R.D. at 106 ("[I]t is the use of standardized debt collection letters that ha[s] given rise to the plaintiff's claim. The questions of law and fact involved . . . relate to the use of the debt collection letters admittedly mailed by defendant to the proposed class. These common questions of law and fact surrounding the contents and mailing of these letters predominate over individual issues.").

### G. A class action is the superior means for the fair and efficient adjudication of Ms. Riddle's and the class's claims.

Lastly, Rule 23(b)(3) also requires that the court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In evaluating whether the "superiority" requirement is satisfied, courts consider the following: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Because the claims in this case arise from a form initial debt collection letter that was materially identical for all 200 recipients, a class action is the superior vehicle for determining the rights of absent class members. No single member of the class has an interest in controlling the prosecution of this action because the claims of all class members are identical, as the allegations involve standardized conduct. Alternatives to a class action are either no recourse for nearly 200 absent class members, or a multitude of lawsuits filed in different forums, resulting in the inefficient administration of the litigation.

What's more, "a class action is superior when potential damages may be too insignificant to provide class members with incentive to pursue a claim individually." *Smith*, 2015 WL 461529, at *6. In *Smith*, this Court found predominance in a class action under the Fair Credit Reporting Act because "statutory damages for each Class Member (ranging between $100.00 and $1,000.00, as set forth in 15 U.S.C. § 1681n) are small, providing little incentive for individual litigation of the Class." *Id.* The same is true here, as the FDCPA similarly limits individual statutory damages to $1,000 for named plaintiffs. *See Bicking*, 2011 WL 532674, at *4 ("class litigation provides a superior means of adjudicating the claims presented here, as the minimal recovery available to most litigants under the FDCPA gives little incentive for class members to pursue their claims individually").

In sum, "[t]he class action procedure is the superior method for dispute resolution in this matter as the alternative mechanism, permitting individual lawsuits for statutory damages, would be costly and duplicative." *Id.* Superiority correspondingly is satisfied. *Talbott*, 191 F.R.D. at 106 ("Several courts examining these factors say that class actions are the most efficient way to try the legality of a collection letter.").

II.     **This Court should preliminarily approve the class settlement as fair, reasonable, and adequate under Rule 23(e).**

Having established the suitability of her settlement class, Ms. Riddle now turns to the reasonableness of her proposed settlement on its behalf. At this stage of the proceeding, when presented with a proposed class settlement, Rule 23(e) requires that the Court make a preliminary fairness determination:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined . . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004); *see also* 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11.25 (4th ed. 2002). Then, after the preliminary fairness evaluation has been made, the class has been certified for settlement purposes, and notice has been issued, the Court holds a final fairness hearing to show that the proposed settlement is truly fair, reasonable, and adequate. *See* MANUAL FOR COMPLEX LITIGATION § 21.633-34; 4 NEWBERG, *supra* at § 11.25.

Preliminary approval thus requires only that this Court evaluate whether the proposed settlement: (1) was negotiated at arm's-length; and (2) is within the range of possible litigation outcomes such that "probable cause" exists to disseminate class notice and begin the formal fairness process. *See* MANUAL FOR COMPLEX LITIGATION § 21.632-33. To that end, the Fourth Circuit has identified a number of factors to assess both the procedural and substantive fairness of a class settlement proposal: (1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding

the negotiations; (4) the experience of counsel in the area of class action litigation; (5) the relative strength of the plaintiff's case on the merits; (6) the existence of any difficulties of proof or strong defenses the plaintiff is likely to encounter if the case goes to trial; (7) the anticipated duration and expense of additional litigation; (8) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (9) the degree of opposition to the settlement. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). Rule 23(e) itself requires the Court to consider several additional factors, including that the class representatives and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e).

And in applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are highly favored. *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) (noting that "[i]n the class action context in particular, there is an overriding public interest in favor of settlement"); *see also Decohen*, 299 F.R.D. at 479 ("[t]here is a strong presumption in favor of finding a settlement fair. Because a settlement hearing is not a trial, the court's role is more balancing of likelihoods rather than an actual determination of the facts and law in passing upon the proposed settlement.").

Here, while a complete fairness evaluation is unnecessary at this juncture, each relevant *Jiffy Lube* factor supports the conclusion that the parties' settlement is fundamentally fair, adequate, and reasonable.

### A. The parties fairly and honestly negotiated their settlement with the benefit of experienced counsel, whose views favor preliminary approval.

The first through fourth *Jiffy Lube* factors all firmly support approval. The parties' arm's-length settlement negotiations demonstrate the fairness of the settlement that was reached, and that it is not a product of collusion. Counsel for Defendant and Ms. Riddle each zealously

12

negotiated on behalf of their clients, and a settlement was reached only after the exchange of multiple settlement demands and counteroffers, and after several telephone conferences over the course of weeks. What's more, counsel are amply qualified to serve their clients given their valuable experience with similar consumer protection class litigation. *See, e.g.*, Johnson Decl. at ¶¶ 6-11.

The settlement was achieved with a clear view as to the strengths and weaknesses of Ms. Riddle and the class's case, particularly given the Court's ruling in Ms. Riddle's favor on Defendant's motion to dismiss. ECF No. 11. Following the denial of Defendant's motion, and in connection with their settlement discussions, the parties exchanged informal discovery concerning Defendant's net worth, potential class damages, and the number of potential class members.

Counsel, who have substantial experience in litigating consumer protection class actions, and this Court are therefore adequately informed to evaluate the fairness of the settlement. Both Ms. Riddle and class counsel firmly believe that the settlement is fair, reasonable, and adequate, and in the best interests of the class. Their views support approval. *Decohen*, 299 F.R.D. at 480 ("Class counsel have significant litigation and appellate experience and . . . has served as class counsel in several successful consumer rights class actions . . . [and] have attested to the fairness of the proposal in the Settlement Agreement. Accordingly, because class counsel's experience— and the other *Jiffy Lube* factors—weigh in favor of fairness, the Court will find that the settlement is fair."); *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

**B. The strengths of Ms. Riddle's case, combined with the risks inherent in continued litigation and securing class certification, favor preliminary approval.**

As well, the fifth *Jiffy Lube* factor similarly favors preliminary approval. While Ms. Riddle remains confident in her claims, she also recognizes that every class action—indeed, every case—involves some level of uncertainty on the merits. Settlements resolve that inherent uncertainty, and are therefore strongly favored by the courts, particularly in class actions. This action is not unique in this regard.

Regardless of the Court's denial of the motion to dismiss, the parties continue to disagree about the merits of the claims, creating uncertainty about the ultimate outcome of this litigation and whether a class would be certified over Defendant's objection. Given these considerations, preliminary approval of the settlement is appropriate to avoid the uncertainties of continued litigation in favor of immediate compensation for all class members. *See Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 680 (D. Md. 2013) ("Furthermore, absent final approval of the Amended Settlement Agreement, litigation of this dispute could prove to be long and expensive. In particular, the likely next steps in this case—e.g., additional discovery and dispositive motions—would require substantial time by the parties' attorneys. Although there is nothing to indicate that Defendant would be unable to satisfy a judgment if one were ultimately entered, it is not clear how long it might take to resolve this lawsuit. On balance, the risks, delays, and costs associated with further litigation weigh in favor of granting final approval of the Amended Settlement Agreement.").

**C. The relief afforded by the settlement—when compared to the limitations on damages imposed by the FDCPA—favors preliminary approval.**

Concerning compensation, the settlement guarantees recoveries at the top end of those allowed under the FDCPA. For the class, the $5,500 settlement fund nearly reaches the full limit on statutory damages imposed by the FDCPA of one percent of Defendant's net worth. *See* 15

U.S.C. § 1692k(a)(2)(B). Correspondingly, had Ms. Riddle spurned settlement and ultimately (1) certified the class over Defendant's objection, (2) prevailed either at summary judgment or at trial, and (3) obtained the maximum statutory recovery she could have obtained, the likely difference for the class in taking on such risk would amount to only a few hundred dollars more than what the settlement guarantees today. That is, Ms. Riddle would be risking the potential for no recovery at all in search of just a few dollars more per class member than what Defendant now offers.[2]

Second, Ms. Riddle also secured prospective, non-monetary relief in that Defendant will no longer use the form initial debt collection letter at issue—a public benefit that was not necessarily available at trial given that courts disagree on whether the FDCPA allows such injunctive relief. *See, e.g.*, *Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961, 977 (N.D. Ohio 2009) ("This Court agrees that declaratory and injunctive relief are not appropriate under the FDCPA.").

Given this change in Defendant's collections practices and class members' recovery of near-maximum statutory damages, the parties' settlement is fair, reasonable, and adequate, and should be preliminarily approved. *See Singleton*, 976 F. Supp. 2d at 680 ("Even if the Plaintiffs were to prevail on their FCRA claims at trial, it is far from certain that a jury would award the

---

[2]    Worth mentioning, in evaluating the fairness of the consideration offered in settlement, it is not the role of this Court to second-guess the negotiated resolution of the parties. "[T]he court's intrusion upon what is otherwise a private, consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). The issue is not whether the settlement could have been better in some fashion, but whether it is fair: "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

maximum of $1,000 to each Class member, especially given the statutory factors that have to be taken into account in making such an award, including frequency and persistence of noncompliance with the statute, nature of the noncompliance, and the extent to which noncompliance was willful or negligent. Further, this case involves allegations of technical FCRA violations, which creates the risk that even if a jury awarded the minimum requisite statutory damages, i.e., $100 to each of the individual class members, the court may find remitter/reduction appropriate.").

What's more, this is particularly true considering that there was never any guarantee of full statutory damages, even presuming trial victory, because the FDCPA's damages provision is permissive rather than mandatory. The law allows for statutory damages awards *up to* certain amounts ($1,000 for Ms. Riddle, and the lesser of $500,000 or 1% of Defendant's net worth for the class) after balancing such factors as the nature of the debt collector's noncompliance, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional. 15 U.S.C. § 1692k(b)(2). Thus, despite a victory in the class's favor, a jury may still have awarded class members little in the way of statutory damages, or even potentially none at all. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages [in an FDCPA action] are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable.").

And the risk of a minimal damages award was not merely hypothetical. *See, e.g.*, *Dickens v. GC Servs. Ltd. P'ship*, 220 F. Supp. 3d 1312, 1326 (M.D. Fla. 2016) ("Applying the factors the Court must apply under Section 1692k of the FDCPA, the Court concludes in its discretion

that the facts of this case call for the award of only nominal damages. The plaintiff or plaintiffs in this case, however many they may have been, would have been awarded $1.00 in statutory damages."), *vacated and remanded*, 706 F. App'x 529 (11th Cir. 2017); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, No. 06-1397, 2011 WL 1434679, at *11 (N.D. Ohio 2011) (analyzing the factors set forth in 15 U.S.C. § 1692k, and awarding no "additional damages" to members of the class).

Accordingly, the sixth *Jiffy Lube* factor supports preliminary approval of the settlement.

### D. The immediate value obtained for the class outweighs the mere possibility of future relief after protracted and expensive litigation.

Turning to the seventh *Jiffy Lube* factor, Ms. Riddle is pleased to have obtained an immediate, substantial recovery for the class while avoiding the pitfalls, delays, and expense of continued litigation. Rather than risk the possibility of a smaller recovery, or even no recovery at all, after many more months—or potentially years—of contentious proceedings, Ms. Riddle proposes a $5,500 class fund that will provide immediate individual recoveries of at least $27.50 per participating class member, which compares favorably to other recent FDCPA class settlements premised upon allegedly deficient disclosures. *See, e.g.*, *Hoffman v. Law Office of Fradkin & Weber, P.A*, No. 19-163, ECF No. 24 (D. Md. Nov. 5, 2019) ($39.44 per claimant); *Smith v. Cohn, Goldberg & Deutsch, LLC*, No. 17-2291, ECF No. 33 (D. Md. July 19, 2018) ($30.22 per claimant); *Marcoux v. Susan J. Szwed, P.A.*, No. 15-93, 2017 WL 679150, at *4 (D. Me. Feb. 21, 2017) ($42 per class member); *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079 (E.D. Pa. Sept. 13, 2016) ($10.92 each); *Schell v. Frederick J. Hanna & Assocs., P.C.*, No. 15-418, 2016 WL 3654472 (S.D. Ohio July 8, 2016) ($10 each); *Schuchardt*, 314 F.R.D. at 684 ($15.10 each); *Baldwin v. Glasser & Glasser, P.L.C.*, No. 15-490, ECF No. 20 (E.D. Va. Mar. 24, 2016) ($15 per class member); *Whitford v. Weber &*

*Olcese, P.L.C.*, No. 15-400, 2016 WL 122393 (W.D. Mich. Jan. 11, 2016) ($10 each); *Little-King v. Hayt Hayt & Landau*, No. 11-5621, 2013 WL 4874349, at *14 (D.N.J. Sept. 10, 2013) ($7.87 each); *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006) ($7.32 each).

### E.  The settlement treats all class members equitably.

Next, Rule 23(e)(2)(D) requires this Court to confirm that the settlement treats all class members equitably. The related Advisory Committee's Note advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018).

Here, each class member has the same claim resulting from Defendant mailing him or her an initial collection letter suffering from the same alleged disclosure deficiencies. And as a result, the settlement provides that each participating class member will receive an equal portion of the $5,500 class fund. Relatedly, the release affects each class member in the same way as all members will agree to release the same FDCPA claims. This factor accordingly supports preliminary approval. *See Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-660, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) ("This proposal is fair and equitable because the class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund.").

### III.  This Court should approve the parties' proposed direct mail notice program.

Pursuant to Rule 23(e), upon preliminary approval, this Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Such notice must be the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means

"individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Here, the parties have agreed to a notice program to be administered by a well-respected third-party class administrator, First Class, Inc.,[3] which will use all reasonable efforts to provide direct mail notice to each class member, including by using skip-trace search efforts to find updated addresses for any notices returned undeliverable. The proposed plan complies with Rule 23 and due process because, among other things, it informs class members—directly—of (1) the nature of this action; (2) the essential terms of the parties' settlement, including the class definition and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion, and that class members may make an appearance through counsel; (5) information regarding Ms. Riddle's individual award and her request for an award of attorneys' fees and expenses for her counsel; and (6) how to make inquiries about the settlement, and where to find additional information. Fed. R. Civ. P. 23(c)(2)(B); MANUAL FOR COMPLEX LITIGATION § 21.312.

In short, this notice plan ensures that class members' due process rights are amply protected and should be approved. *See* Fed. R. Civ. P. 23(c)(2)(A); *see also Decohen*, 299 F.R.D. at 479 ("Under the circumstances of this case, when all class members are known in advance, the Court finds that the method of direct mail notice to each class member's last known address—and a second notice if the first was returned as undeliverable—was the best practicable notice.").

---

[3]     First Class, Inc. is a highly experienced settlement administrator that has previously been approved to administer similar class action settlements, including within this Circuit. *See, e.g.*, *Hoffman*, 2019 WL 2723581, at \*2; *Veness v. Heywood, Cari & Anderson, S.C.*, No. 17-338, 2017 WL 6759382, at \*5 (W.D. Wisc. Dec. 29, 2017); *Green v. Dressman Benzinger Lavelle, PSC*, No. 14-142, 2014 WL 4816698, at \*2 (W.D. Ohio Sept. 18, 2014).

**IV.    Scheduling a final fairness hearing is appropriate.**

Finally, the last step in the approval process is a final fairness hearing at which this Court may hear all evidence and argument necessary to make its final fairness determination pursuant to Rule 23. There, proponents of the settlement may offer argument in support of final approval, and class members who have properly objected to the settlement also may be heard. This Court will determine after the final fairness hearing whether the settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e). The parties respectfully request that this Court set a date for a fairness hearing at the Court's convenience, between 90 and 120 days after the Court's preliminary approval of the settlement.

**Conclusion**

Ms. Riddle respectfully requests that this Court enter the accompanying order (i) certifying the proposed settlement class; (ii) appointing her as the class representative and GDR as class counsel; (iii) granting preliminary approval to the parties' class settlement; and (iv) directing notice as described above. Defendant does not oppose this relief.

Dated:  December 18, 2019                    Respectfully submitted,


                                             /s/ Jesse S. Johnson
                                             Jesse S. Johnson (*pro hac vice*)
                                             Florida Bar No. 0069154
                                             GREENWALD DAVIDSON RADBIL PLLC
                                             7601 N. Federal Hwy., Suite A-230
                                             Boca Raton, FL 33487
                                             Tel: (561) 826-5477
                                             Fax: (561) 961-5684
                                             jjohnson@gdrlawfirm.com

                                             Matthew P. Stapleton (WVSB # 12334)
                                             STAPLETON LAW OFFICES
                                             400 5th Avenue
                                             Huntington, WV 25701
                                             Tel: (304) 529-1130
                                             StapletonLawOffices@gmail.com

                                             *Counsel for Plaintiff and the proposed class*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 18, 2019, I filed a copy of the foregoing with the Court

using the Clerk of Court's CM/ECF system, which will provide notice to all counsel of record.

/s/ Jesse S. Johnson
Jesse S. Johnson