# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF WEST VIRGINIA
# HUNTINGTON DIVISION

|   |   |
|---|---|
| BOBBI J. RIDDLE, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ATKINS & OGLE LAW OFFICES, LC,<br><br>Defendant. | **Civil Action No. 3:19-cv-00249**<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

**Table of Contents**

Introduction ................................................................................................................................... 1

Class Settlement Summary .......................................................................................................... 2

Argument ..................................................................................................................................... 3

    I.    This Court should confirm its certification of the settlement class. .................................. 3

    II.   This Court should finally approve the class settlement as fair, reasonable, and adequate under Rule 23(e) and applicable Fourth Circuit law. ................................................................. 3

        A.    The parties fairly and honestly negotiated their settlement with the benefit of experienced counsel, whose views favor final approval. ......................................................... 4

        B.    The strengths of Ms. Riddle's case, combined with the risks inherent in continued litigation and securing class certification, favor final approval. ............................................. 6

        C.    The relief afforded by the settlement—when compared to the limitations on damages imposed by the FDCPA—favors final approval. ................................................... 7

        D.    The immediate value obtained for the class outweighs the mere possibility of future relief after protracted and expensive litigation. ...................................................... 9

        E.    Overwhelming support from the parties, their counsel, and the class highlights the fairness and reasonableness of the settlement. ...................................................................... 10

        F.    The settlement treats all class members equitably. ...................................................... 11

Conclusion ................................................................................................................................. 12

**Introduction**

The class settlement now before this Court for final approval will provide 195 participating class members approximately $28.20 each in return for their release of certain claims under the Fair Debt Collection Practices Act ("FDCPA") in connection with debt collection letters mailed by Atkins & Ogle Law Offices, LC ("Defendant"). Bobbi J. Riddle alleged that each of those letters provided insufficient disclosures required by law, though Defendant maintains that it complied with all applicable statutory provisions. However, rather than risk additional time and resources litigating the class's claims through trial, the parties have reached a resolution whereby Defendant will pay the class an aggregate sum of $5,500—nearly reaching the maximum possible statutory damages award allowed under the FDCPA, which caps such damages at 1% of Defendant's net worth.

Defendant also retired the form of debt collection letter at the heart of this litigation, foreclosing the risk that other consumers would be subjected to the same debt collection practices that prompted this lawsuit. Defendant separately will pay $1,000 to Ms. Riddle—her maximum individual recovery under the statute—as well as the costs of distributing class notice and administering the settlement. Defendant additionally agreed to pay Ms. Riddle's attorneys' fees, costs, and expenses separate and apart from the class fund. Those fees and expenses are the subject of Ms. Riddle's previously filed motion. *See* ECF No. 18.

The parties' direct mail class notice campaign resulted in just one exclusion and no objections. In light of this strong support from the class, as well as the monetary and prospective relief provided, Ms. Riddle respectfully requests that this Court finally approve the parties' class settlement and confirm its certification of the settlement class. Ms. Riddle additionally requests approval of the agreed attorneys' fee and expense award for her counsel that will be heard

1

simultaneous with the instant request. Significantly, neither Defendant nor any class members oppose any of the foregoing relief.

**Class Settlement Summary**

This Court previously certified a settlement class under Rule 23(b)(3) comprised of all persons with a West Virginia address to whom Defendant mailed an initial debt collection communication not returned as undeliverable, in connection with the collection of a consumer debt, between April 4, 2018 and April 4, 2019, and which stated: "You have the right to cure this default by sending this amount to me within 30 days of the date of this letter." *Riddle v. Atkins & Ogle Law Offices, LC*, No. 19-249, 2020 WL 1303939, at *1 (S.D. W. Va. Feb. 26, 2020).

The class consists of 196 persons,[1] only one of whom requested exclusion, and none of whom objected to the settlement. *See* Declaration of Bailey Hughes, attached as Exhibit A, at ¶¶ 7, 13-14. The deadline for doing so passed over a month ago, on April 27, 2020. *Riddle*, 2020 WL 1303939, at *5. Thus, each of the 195 participating class members will receive approximately $28.20, combining for a $5,500 class settlement fund that falls just short of the FDCPA's cap on class-wide statutory damages of 1% of Defendant's net worth. *See* 15 U.S.C. § 1692k(a)(2)(B). Should any settlement checks go uncashed after First Class, Inc. ("First Class")—the Court-approved class administrator—takes all reasonable steps to forward checks to any forwarding addresses, all remaining proceeds will be directed to Legal Aid of West Virginia, as approved by this Court. Stated another way, no settlement funds will revert to Defendant.

Further benefitting class members and other consumers nationwide is Defendant's commitment via the settlement agreement to no longer use the same form of collection letter that

---

[1] The parties initially estimated approximately 200 class members but learned after de-duplication efforts in connection with class notice mailings that the class consists of only 196 individuals.

precipitated this litigation. Ms. Riddle thus has obtained a lasting public benefit in the form of a change in Defendant's collection practices in direct response to this lawsuit.

For her individual claim under the statute, Defendant will pay Ms. Riddle $1,000 separate and apart from all other settlement monies. This recovery represents the most she is allowed under the FDCPA. Defendant also paid all costs of disseminating class notice and will continue to pay for settlement administration. What's more, subject to this Court's approval, Defendant separately will pay an award of attorneys' fees, costs, and expenses to class counsel in the agreed amount of up to $50,000.

## Argument

### I. This Court should confirm its certification of the settlement class.

This Court previously certified the class for settlement purposes. *Riddle*, 2020 WL 1303939, at *1-2. Ms. Riddle agrees with the Court's reasoning, sees no need to revisit certification here, and thus respectfully submits that this Court should confirm its certification of the settlement class.

### II. This Court should finally approve the class settlement as fair, reasonable, and adequate under Rule 23(e) and applicable Fourth Circuit law.

As previewed in Ms. Riddle's unopposed motion for preliminary approval, *see* ECF No. 15 at 11-18, courts in the Fourth Circuit consider numerous factors in assessing both the procedural and substantive fairness of a class settlement proposal: (1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; (4) the experience of counsel in the area of class action litigation; (5) the relative strength of the plaintiff's case on the merits; (6) the existence of any difficulties of proof or strong defenses the plaintiff is likely to encounter if the case goes to trial; (7) the anticipated duration and expense of additional litigation; (8) the solvency of the

3

defendant and the likelihood of recovery on a litigated judgment; and (9) the degree of opposition to the settlement. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991).[2]

Moreover, Rule 23(e) requires courts to consider several other factors, including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e). And in applying all of the foregoing, this Court should be guided foremost by the general principle that settlements of class actions generally are favored. *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) (noting that "[i]n the class action context in particular, there is an overriding public interest in favor of settlement"); *see also Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. 2014) ("[t]here is a strong presumption in favor of finding a settlement fair. Because a settlement hearing is not a trial, the court's role is more balancing of likelihoods rather than an actual determination of the facts and law in passing upon the proposed settlement.").

To that end, each relevant *Jiffy Lube* factor supports the conclusion that the parties' settlement here is fundamentally fair, adequate, and reasonable and should be approved.

### A. The parties fairly and honestly negotiated their settlement with the benefit of experienced counsel, whose views favor final approval.

The first four *Jiffy Lube* factors all squarely support approval. The parties engaged in weeks of arm's-length settlement negotiations that included multiple settlement demands and counteroffers as well as numerous telephone conferences. These efforts, which were spearheaded by highly experienced counsel familiar with consumer protection class litigation, *see* ECF No. 18-1 (Declaration of Jesse S. Johnson in Support of Plaintiff's Unopposed Motion for Approval of an Award of Attorneys' Fees, Costs, and Litigation Expenses) at ¶¶ 12-20, demonstrate the fairness of the settlement, and that it is not a product of collusion.

---

[2] Internal citations, quotations, and footnotes are omitted, and emphasis is added, unless otherwise noted.

And the parties reached their settlement here with a clear view as to the strengths and weaknesses of the class's case, particularly given the Court's ruling in Ms. Riddle's favor on Defendant's motion to dismiss. ECF No. 11. Following the denial of that motion, and in connection with their settlement discussions, the parties exchanged informal discovery on (i) the composition of the settlement class; (ii) Defendant's net worth; and (iii) potential class damages. As the District of New Jersey once found with respect to an FDCPA class settlement:

> With respect to the sufficiency of discovery, the Court notes that counsel asserts knowledge concerning the "identities and [ ] current addresses" of *all* class members. Moreover, because this action is premised primarily upon a form collection notification letter (the class includes only those consumers who received initial correspondence substantially similar to Plaintiff), the Court concludes that legal issues predominate the remaining disputes in this litigation. The Court therefore preliminarily approves the proposed settlement, and turns to the appointment of class counsel.

*Gregory v. McCabe, Weisberg & Conway, P.C.*, No. 13-6962, 2014 WL 2615534, at *9 (D.N.J. June 12, 2014) (emphasis in original).

Counsel—who have substantial experience litigating FDCPA and other consumer protection class actions—and this Court are therefore adequately informed to evaluate the fairness of the settlement. Both Ms. Riddle and class counsel firmly believe that the settlement is fair, reasonable, and adequate, and in the best interests of the class members. Their views support approval. *Decohen*, 299 F.R.D. at 480 ("Class counsel have significant litigation and appellate experience and . . . has served as class counsel in several successful consumer rights class actions . . . [and] have attested to the fairness of the proposal in the Settlement Agreement. Accordingly, because class counsel's experience—and the other *Jiffy Lube* factors—weigh in favor of fairness, the Court will find that the settlement is fair."); *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

### B. The strengths of Ms. Riddle's case, combined with the risks inherent in continued litigation and securing class certification, favor final approval.

Next, the fifth *Jiffy Lube* factor similarly favors final approval. While Ms. Riddle remains confident in her claims, she also recognizes that every class action—indeed, every case—involves some level of uncertainty on the merits. Settlements resolve that inherent uncertainty, and are therefore strongly favored by the courts, particularly in class actions. *Stone*, 749 F. Supp. at 1423. This action is not unique in this regard.

Regardless of the Court's denial of the motion to dismiss, the parties continue to disagree about the merits of the claims and whether a litigation class—as opposed to a settlement class—could be certified over Defendant's objection. Defendant is likely to have objected on any number of grounds, including commonality, typicality, predominance, and superiority. And on the merits, Defendant is likely to have moved for summary judgment and eventually appealed any order in the class's favor. This creates not only uncertainty but also delay; these risks cannot be ignored.

Given these considerations, final approval of the settlement is appropriate to avoid the uncertainties of continued litigation in favor of immediate compensation for all participating class members. *See Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 680 (D. Md. 2013) ("Furthermore, absent final approval of the Amended Settlement Agreement, litigation of this dispute could prove to be long and expensive. In particular, the likely next steps in this case—e.g., additional discovery and dispositive motions—would require substantial time by the parties' attorneys. Although there is nothing to indicate that Defendant would be unable to satisfy a judgment if one were ultimately entered, it is not clear how long it might take to resolve this lawsuit. On balance, the risks, delays, and costs associated with further litigation weigh in favor of granting final approval of the Amended Settlement Agreement.").

**C. The relief afforded by the settlement—when compared to the limitations on damages imposed by the FDCPA—favors final approval.**

Concerning compensation, the settlement guarantees recoveries at the top end of those allowed under the FDCPA. For the class, the $5,500 settlement fund nearly reaches the full limit on statutory damages imposed by the FDCPA of 1% of Defendant's net worth. *See* 15 U.S.C. § 1692k(a)(2)(B); *see also Sanders v. Jackson*, 209 F.3d 998, 1000, 1004 (7th Cir. 2000) (determining that "net worth" for purposes of FDCPA class damages "means balance sheet or book value net worth," computed as "assets listed on the company's balance sheet minus liabilities"). Correspondingly, had Ms. Riddle spurned settlement and ultimately (1) certified the litigation class over Defendant's objection, (2) prevailed either at summary judgment or at trial, (3) overcome any appeals by Defendant, and (4) obtained the maximum statutory recovery she could have obtained, the likely difference for the class in taking on such risk would amount to only a few hundred dollars more, in total, than what the settlement guarantees today. That is, Ms. Riddle would be risking the potential for no recovery at all in search of just a few dollars more per class member than what Defendant now offers.[3]

Moreover, Ms. Riddle also secured prospective, non-monetary relief in that Defendant will no longer use the form initial debt collection letter at issue—a public benefit that was not necessarily available at trial given that courts disagree on whether the FDCPA allows such injunctive relief. *See, e.g.*, *Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961, 977 (N.D. Ohio

---

[3] Worth mentioning, in evaluating the fairness of the consideration offered in settlement, it is not the role of this Court to second-guess the negotiated resolution of the parties. "[T]he court's intrusion upon what is otherwise a private, consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). The issue is not whether the settlement could have been better in some fashion, but whether it is fair: "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.*

2009) ("This Court agrees that declaratory and injunctive relief are not appropriate under the FDCPA.").

Given this change in Defendant's collections practices and class members' recovery of near-maximum statutory damages, the parties' settlement is fair, reasonable, and adequate, and should be finally approved. *See Singleton*, 976 F. Supp. 2d at 680 ("Even if the Plaintiffs were to prevail on their FCRA claims at trial, it is far from certain that a jury would award the maximum of $1,000 to each Class member, especially given the statutory factors that have to be taken into account in making such an award, including frequency and persistence of noncompliance with the statute, nature of the noncompliance, and the extent to which noncompliance was willful or negligent. Further, this case involves allegations of technical FCRA violations, which creates the risk that even if a jury awarded the minimum requisite statutory damages, i.e., $100 to each of the individual class members, the court may find remitter/reduction appropriate.").

And this is particularly true considering that, even presuming trial victory, there was never any guarantee of full statutory damages for the class because the FDCPA's damages provision is permissive rather than mandatory. The law allows for statutory damages awards *up to* certain amounts ($1,000 for Ms. Riddle, and the lesser of $500,000 or 1% of Defendant's net worth for the class) after balancing such factors as the nature of the debt collector's noncompliance, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional. 15 U.S.C. § 1692k(b)(2).

Thus, despite a victory in the class's favor, a jury still could have awarded class members little in the way of statutory damages, or even potentially none at all. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages [in an FDCPA action] are not mandatory, continued litigation presents a risk to Plaintiffs of expending

8

time and money on this case with the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable.").

And the risk of a minimal damages award was not merely hypothetical. *See, e.g.*, *Dickens v. GC Servs. Ltd. P'ship*, 220 F. Supp. 3d 1312, 1326 (M.D. Fla. 2016) ("Applying the factors the Court must apply under Section 1692k of the FDCPA, the Court concludes in its discretion that the facts of this case call for the award of only nominal damages. The plaintiff or plaintiffs in this case, however many they may have been, would have been awarded $1.00 in statutory damages."), *vacated and remanded*, 706 F. App'x 529 (11th Cir. 2017); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, No. 06-1397, 2011 WL 1434679, at *11 (N.D. Ohio 2011) (analyzing the factors set forth in 15 U.S.C. § 1692k and awarding no "additional damages" to members of the class).

Accordingly, the sixth *Jiffy Lube* factor firmly supports final approval of the settlement.

### D. The immediate value obtained for the class outweighs the mere possibility of future relief after protracted and expensive litigation.

Turning to the seventh factor, Ms. Riddle is pleased to have obtained an immediate, substantial recovery for the class while avoiding the pitfalls, delays, and expense of continued litigation. Rather than risk the possibility of a smaller recovery, or even no recovery at all, after many more months—or potentially years—of contentious proceedings, Ms. Riddle proposes a $5,500 class fund that will provide immediate individual recoveries of $28.20 per participating class member. This figure compares favorably to other recent FDCPA class settlements premised upon allegedly deficient disclosures. *See, e.g.*, *Hoffman v. Law Office of Fradkin & Weber, P.A*, No. 19-163, ECF No. 24 (D. Md. Nov. 5, 2019) ($39.44 per claimant); *Dickens v. GC Servs. Ltd. P'ship*, No. 16-803, 2019 WL 2284056, at *2 (M.D. Fla. May 28, 2019) ($10 each); *Smith v. Cohn, Goldberg & Deutsch, LLC*, No. 17-2291, ECF No. 33 (D. Md. July 19, 2018) ($30.22 per

9

claimant); *Marcoux v. Susan J. Szwed, P.A.*, No. 15-93, 2017 WL 679150, at *4 (D. Me. Feb. 21, 2017) ($42 per class member); *Gonzalez v. Germaine Law Office PLC*, No. 15-1427, 2016 WL 5844605 (D. Ariz. Oct. 3, 2016) ($19.25 per class member); *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079 (E.D. Pa. Sept. 13, 2016) ($10.92 each); *Schell v. Frederick J. Hanna & Assocs., P.C.*, No. 15-418, 2016 WL 3654472 (S.D. Ohio July 8, 2016) ($10 each); *Schuchardt*, 314 F.R.D. at 684 ($15.10 each); *Baldwin v. Glasser & Glasser, P.L.C.*, No. 15-490, ECF No. 20 (E.D. Va. Mar. 24, 2016) ($15 per class member); *Whitford v. Weber & Olcese, P.L.C.*, No. 15-400, 2016 WL 122393 (W.D. Mich. Jan. 11, 2016) ($10 each); *Little-King v. Hayt Hayt & Landau*, No. 11-5621, 2013 WL 4874349, at *14 (D.N.J. Sept. 10, 2013) ($7.87 each); *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006) ($7.32 each).

### E. Overwhelming support from the parties, their counsel, and the class highlights the fairness and reasonableness of the settlement.

The ninth and final *Jiffy Lube* factor considers the degree of opposition to the settlement. It bears repeating that all involved in this settlement agree that the negotiated resolution is a fair and reasonable compromise of the class's claims. In particular, Ms. Riddle and class counsel are proud of the results achieved and fully support approval. It follows that a strong initial presumption of fairness should attach to the proposed settlement because it was reached by well qualified counsel engaged in arm's-length negotiations, for which courts accord great weight in their fairness analyses. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement.").

Plus, "[t]he attitude of the members of the class, as expressed directly or by failure to object, after notice, to the settlement, is a proper consideration for the trial court." *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975). To that end, no such opposition exists—following her direct mail notice campaign, not one person has objected to the settlement, and just one class member excluded herself. Also noteworthy, no objections resulted from notice provided to governmental agencies under the Class Action Fairness Act.

In short, the class's support for the settlement has now reinforced the initial presumption of fairness such that class members' positive reactions and the absence of any opposition strongly supports final approval. *See Decohen*, 299 F.R.D. at 480 ("Furthermore, the lack of objections and opt-outs from the class weighs heavily in favor of adequacy."); *In re The Mills Corp. Secs. Litig.*, 265 F.R.D. 246, 257 (E.D. Va. 2009) ("[A]n absence of objections and a small number of opt-outs weighs significantly in favor of the settlement's adequacy.").

**F. The settlement treats all class members equitably.**

Finally, Rule 23(e)(2)(D) requires this Court to confirm that the settlement treats all class members equitably. The related Advisory Committee's Note directs courts to consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018).

Here, each class member has the same claim resulting from Defendant mailing him or her an initial collection letter suffering from the same alleged disclosure deficiencies. And as a result, the settlement provides that each participating class member will receive an equal portion of the $5,500 class fund. Relatedly, the release affects each class member in the same way as all members will release the same FDCPA claims. This factor accordingly supports final approval.

*See Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-660, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) ("This proposal is fair and equitable because the class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund.").

## Conclusion

After more than a year of litigation during which Ms. Riddle overcame Defendant's early efforts to dismiss her class claims, she now presents a settlement that will provide participating class members nearly $30 each, plus prospective relief in the form of changed debt collection practices to address Ms. Riddle's concerns. Class members overwhelmingly support the settlement, as evidenced by their lack of objections and just one opt-out. Ms. Riddle accordingly requests that this Court enter the accompanying order granting final approval to the parties' class action settlement.

Significantly, neither Defendant nor any class members oppose this relief.

Dated:  June 1, 2020			Respectfully submitted,


			/s/ Jesse S. Johnson
			Jesse S. Johnson (*pro hac vice*)
			Florida Bar No. 0069154
			GREENWALD DAVIDSON RADBIL PLLC
			7601 N. Federal Hwy., Suite A-230
			Boca Raton, FL 33487
			Tel: (561) 826-5477
			jjohnson@gdrlawfirm.com

			*Class Counsel*

			Matthew P. Stapleton (WVSB # 12334)
			STAPLETON LAW OFFICES
			400 5th Avenue
			Huntington, WV 25701
			Tel: (304) 529-1130
			StapletonLawOffices@gmail.com

			*Liaison Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2020, I filed a copy of the foregoing with the Court using the Clerk of Court's CM/ECF system, which will provide notice to all counsel of record.

/s/ Jesse S. Johnson
Jesse S. Johnson